UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ROBERT GILCREST**,

    Plaintiff,

vs.                                           Case No. 05-CV-923
                                                     Judge Gregory L. Frost

**UNUM LIFE INSURANCE CO. OF**       Magistrate Judge Abel
**AMERICA**,
    *et. al.*,

    Defendants.

## OPINION & ORDER

In this Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA") action, Plaintiff Robert Gilcrest ("Gilcrest") appeals the decision of Defendants Unum Life Insurance Company ("Unum") and Government Liquidation.com ("GLC") to terminate his long-term disability benefits. (Doc. # 1). The parties have filed cross-motions for judgment on the administrative record, and briefing on those motions is now complete. (Docs. # # 24, 25, 27, 28). *See also Wilkins v. Baptist Healthcare Sys*., 150 F.3d 609, 619 (6th Cir. 1998). For the reasons that follow, the Court **DENIES** Gilcrest's motion (Doc. # 25) and **GRANTS** the motion of Unum and GLC. (Doc. # 24).

## BACKGROUND

GLC formerly employed Gilcrest. During his employment with GLC, Gilcrest was eligible for, and a participant in, GLC's employee welfare benefit plan ("Plan"). The Plan was established and maintained pursuant to the provisions of ERISA. Unum was the plan

1

administrator and also paid benefits under the Plan.  (AR 272, 285).[1]

Gilcrest injured his back on September 12, 2003 while he was still a GLC employee. Subsequent to his injury, Gilcrest applied for and was granted short term disability benefits under the Plan.  Gilcrest also applied for and received Social Security disability benefits.  After his eligibility for short-term benefits expired, Gilcrest applied for and was awarded long term disability benefits.  (AR 781-784).  Unum suspended those benefits effective October 12, 2004 upon determining that his back injury did not prohibit him from performing his regular occupation.  *Id*. at 782.

The parties dispute neither the nature nor the extent of Gilcrest's injury.  In addition, the parties agree on the work limitation placed on Gilcrest by his physician, Dr. Joseph Shehadi, M.D. ("Shehadi"); specifically, Gilcrest was prohibited from lifting more than twenty-five (25) pounds.  *Id.* at 769.  Rather, in an unusual twist on the standard ERISA case, the parties disagree on the appropriate job description for Gilcrest's position with GLC.

**I.     Plan Language**

The plan defines "disabled" as follows:

> You are disabled when Unum determines that:
> - you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
> -you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.
> After 36 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

(AR 297).  "Limited" means "what [the insured] cannot or [is] unable to do."  *Id.* at 319.  The

---

[1]  "AR" denotes Administrative Record.

2

phrase "material and substantial duties" describes duties that "are normally required for the performance of [the insured's] regular occupation, and cannot be reasonably omitted or modified." *Id.* The Plan defines "regular occupation" as "the occupation [the insured is] routinely performing when [the insured's] disability begins. Unum will look at [the insured's] occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location." *Id.* at 321. Lastly, "gainful occupation" means "an occupation that is or can be expected to provide [the insured] with an income within 12 months of your return to work, that exceeds 80% of [the insured's] indexed monthly earnings, if [the insured is] working, or 60% of [the insured's] indexed monthly earnings, if [the insured is] not working." *Id.* at 318.

The Plan also stated that benefit payments "may be reduced by deductible sources of income and disability earnings." *Id.* at 276. The Plan defined "deductible sources of income" as "income from deductible sources listed in the Plan which [the insured] receive[s] or is entitled to receive." *Id.* at 318. Social Security benefits were listed in the Plan as a type of deductible source of income. *Id.* at 300. Moreover, the Plan stated that Unum had the right to recover any overpayments due to any error Unum made in processing an insured's claim and any overpayments from the insured's receipt of deductible sources of income. *Id.* at 281.

**II.    Job Description**

Several documents in the claim file are pertinent to the issue of Unum's selection of Gilcrest's job description. In Gilcrest's initial application for short term disability benefits, Linda Barckett ("Barckett"), GLC's benefits administrator, checked a box on the form indicating that Gilcrest's position as an assistant site manager was classified as a medium occupation

requiring lifting of twenty-one to fifty pounds. *Id.* at 16. Attached to that document was GLC's job description for an assistant site manager. The description set forth the duties and physical demands inherent in that position as follows:

> Maintain, within the confines of assigned work areas, strict adherence to safety, environmental, and security laws, regulations, and requirements as set forth by the company, local hosts, and all applicable government directives. Reports observed violations to the Site Manager. Assists the Site Manager in adhering to company procedures for the acceptance, receiving, positioning, and security of al inventory received by the company, local hosts, and all applicable government directives. Reports observed violations to the Site Manager. Inventories delivery orders with the designated DRMO-CV Rep. Ensures inventory being accepted on designated Delivery Order Manifests is accounted for. Records this information and provides immediate reports as directed by the Site Manager. Prepares inventory in accordance with the Field Operations Handbook to ensure the sales revenue goals are achieved. Manages inventory to include aging, scrap, and data input to ensure an inventory accuracy rate of 95% or better. Ensures 100% accuracy of all data input into OneWorld. Accounts for and protects company property and inventory at all times. Performs duties of Site Manager in his/her absence. Other duties as may be assigned....The employee frequently is required to stand; walk; sit; use hand to finger, handle or feel; and reach with hands and arms. The employee is occasionally required to stoop, kneel, crouch, or crawl. The employee must frequently lift and/or move up to 10 pounds and occasionally lift and/or move up to 25 pounds.

*Id.* at 17-19. Confused by Barckett's decision to mark the box checked "medium" for level of occupation when the job description stated that Gilcrest had to lift twenty-five (25) pounds, Unum contacted Gilcrest by telephone on November 13, 2003. *Id.* at 382. Gilcrest told the Unum representative that his job "requires lots of ... lifting up to 80 lbs. without assistance." *Id.* The next day, a Unum employee spoke with Barckett on the telephone and Barckett said that Gilcrest actually regularly performs heavy duty work. *Id.* at 45. Barckett continued by commenting that Gilcrest had to be able to perform heavy work (including heavy lifting) before

he returned to work.² *Id.*

At some point during the claims process, Gilcrest sent a document to Unum.³ Id. at 736. The document stated that Gilcrest "cannot walk a great distance, ... lift computers, monitors, tv's, microwaves, 2-1/2 ton truck parts such as generators, starters and other products that [GLC] sell[s] that is [sic] heavy." *Id.*

In addition to the application, written job description, and correspondence, Unum considered an occupational analysis that was completed on June 16, 2004 by Christy Searcy ("Searcy"), a senior vocational rehabilitation consultant that worked for Unum. Of relevance was Searcy's comparison of Gilcrest's job description discussed above with occupations defined in the United States Department of Labor's Dictionary of Occupational Titles ("DOT"). The DOT provides basic occupational information to public and private users.⁴ United States Department of Labor, http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTMESS.HTM, (visited June 28, 2006). Searcy engaged in that comparison because the Plan defined Gilcrest's "regular occupation" in terms of how it was performed in the national economy, "instead of how the work tasks [we]re performed for a specific employer or at a specific location." (AR at 321).

Searcy's report referenced GLC's job description and concluded that Gilcrest's job as an

---

² The Court declines Gilcrest's invitation to take judicial notice that the typical weight of air compressors exceeds twenty-five (25) pounds. (Doc. # 25 at 11).

³ The referenced document appears to be only a portion of a larger document, and is not signed or addressed. Because it is part of the administrative record the Court will assume that it was indeed a letter from Gilcrest to Unum and that Unum did receive and consider the document. (Doc. # 16).

⁴ DOT has since been replaced by O*Net.

assistant warehouse manager most closely matched the DOT's definition of warehouse manager. (AR 925-28). A warehouse manager may also be referred to as a warehouse supervisor. *Id.* at 926. According to the DOT, a warehouse manager:

> establishes operational procedures for activities, such as verification of incoming and outgoing shipments, handling and disposition of materials, and keeping warehouse inventory current; inspects physical condition of warehouse and equipment and prepares work order for repairs and requisitions for replacement of equipment; confers with the department head to ensure coordination of warehouse activities with such activities as production, sales, records control, and purchasing. Screens and hires warehouse personnel and issues work assignments. Directs salvage of damaged or used material.

(AR 926). According to the DOT, a warehouse manager engages in light strength work that requires occasional lifting, carrying, pushing, and/or pulling of items up to twenty (20) pounds. *Id.* at 928. A warehouse manger must constantly lift items of negligible weight and frequently lift ten pound items. *Id.* In addition, an individual in that position engages in frequent reaching, handling, fingering, talking, and hearing. *Id.* at 928.

On October 27, 2004, an employee of Shehadi contacted Unum and stated that Gilcrest could return to work as of October 5, 2004 but that he was restricted from lifting anything more than twenty-five (25) pounds. *Id.* at 750, 769. The doctor did not order any other restrictions. *Id.*

Shortly thereafter, Unum sent Gilcrest a letter indicating that it was terminating his long term disability benefits as of October 12, 2004 because: (1) GLC's job description indicated that Gilcrest must move up to twenty-five (25) pounds; (2) Searcy's occupational analysis concluded that Gilcrest's job as performed in the national economy required occasional lifting of up to twenty pounds; (3) Shehadi released Gilcrest to return to work with the restriction that he could not lift more than twenty-five (25) pounds. *Id.* at 781-82 , 800, 835. Consequently, Unum's

letter informed Gilcrest "[s]ince [sic] your regular occupation as an Assistance [sic] Site Manager in the national economy requires lifting up to 20 lbs on an occasional basis, and your Attending Physician has released you with a 25 lb. lifting limit, you should be able to do your own occupation as an Assistant Site Manger and benefits will be terminated as of October 12, 2004." *Id.* at 782.

Gilcrest appealed Unum's denial twice; each time, Unum affirmed its previous determination. *Id.* at 834-36; 1529-32.

### III.     Social Security Income

Gilcrest received $ 3,564.00 in Social Security Benefits. *Id.* at 754-56. Unum did not subtract that amount from his payments under the Plan. *Id.* Unum notified Gilcrest that the Plan required him to repay that amount but Gilcrest failed to do so. *Id.*

### IV.     Current Action

Gilcrest filed the instant action on October 6, 2005 seeking an order requiring Unum to: (1) reinstate his long-term disability benefits; (2) pay all past due benefits; (3) pay pre-judgment and post-judgment interest; and (4) pay his attorney's fees and costs. (Doc. # 1 at ¶ ¶ A-E). Defendants then filed an Answer and Counterclaims. (Doc. # 4). Specifically, the Defendants' counterclaims allege that the Plan required Unum to subtract the amount of any Social Security Award received by the insured from the insured's disability payment under the Plan. *Id.* at ¶ 4. Although Gilcrest received Social Security payments, Unum failed to subtract that amount from his long term disability benefits and Gilcrest has not repaid that amount to the Defendants. *Id.* at ¶ ¶ 6-7. Thus, the Defendants assert two counterclaims against Gilcrest–the first for breach of contract, the second for unjust enrichment. *Id.* at ¶ ¶ 8-13.

The cross motions for judgment on the administrative record are now ripe for review. However, because the Sixth Circuit instructs that traditional summary judgment concepts apply to Unum's counterclaims, the Court hereby notifies the parties that it is converting the portion of Unum's motion for judgment on the administrative record that addresses its counterclaims to a motion for summary judgment. *Buchanan v. Aetna Life Ins. Co.*, No. 05-3380, 2006 U.S. App. LEXIS 11046, at * 9 (6th Cir. 2006).  The parties may supplement their briefing in accordance with this conversion on or before July 21, 2006.  No responses or replies will be permitted.

## STANDARD OF REVIEW

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Kalish v. Liberty Mutual/Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 505-506 (6th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).   If the plan provides the administrator with discretion then "the highly deferential arbitrary and capricious standard of review is appropriate."  *Borda v. Hardy, Lewis, Pollard, & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998).   Under that standard, a plan administrator's decision will not be deemed arbitrary and capricious so long as "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome."  *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (noting that "the arbitrary and capricious standard is the least demanding form of judicial review").  However, "the arbitrary and capricious ... standard does not require [the Court] merely to rubber stamp the administrator's decision."  *Jones v. Metropolitan Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th

Cir. 2003)). The Court must "review the quantity and quality of the medical evidence and the opinions on both sides of the issues." *Jones*, 385 F.3d at 661. In other words, a court will uphold a benefit determination if it is "rational in light of the plan's provisions." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996).

The Sixth Circuit does not require a plan to use certain magic words to create discretionary authority for a plan administrator in administering the plan. *Johnson v. Eaton Corp.*, 970 F.2d 1569, 1572 at n.2 (6th Cir. 1992). Yet the Sixth Circuit does insist upon "a clear grant of discretion [to the administrator]" before replacing *de novo* review with the arbitrary and capricious standard. *Wulf v. Quantum Chemical Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994), *cert. denied*, 513 U.S. 1058 (1994).

In the case *sub judice*, the Plan provides Unum with "the broadest discretion permissible under ERISA." (AR 1007). Moreover, the Plan states that benefits will only be paid if Unum "decides in its discretion that the applicant is entitled to them." *Id.* Furthermore, the plan provides "[w]hen making a benefit determination under the policy, Unum has discretionary authority to determine [the insureds'] eligibility for benefits and to interpret the terms and provisions of the policy." *Id.* at 285. Clearly, then, the Plan gives Unum discretion and the Court agrees with the parties that the arbitrary and capricious standard of review applies to the instant matter. (Doc. # 24 at 12; Doc. # 27 at 4-5).

That standard of review is tempered by the fact that Unum both funds and administers the Plan. (AR 272, 285). Thus, an actual conflict of interest exists because Unum "incurs a direct expense as a result of the allowance of benefits and it benefits directly from the denial or discontinuation of benefits." *See Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514,

9

521 (6th Cir. 1998). In this situation, the Sixth Circuit advises that the conflict does not alter the standard of review. *Kalish v. Liberty Mut./Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 506 (6th Cir. 2005). Rather, the existence of a conflict merely becomes a factor in the Court's review of Unum's decision. *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292 (6th Cir. 2005) (citing *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n. 4 (6th Cir. 2000)).

The Court is required to consider only the facts known to the plan administrator at the time the final decision was made to deny long-term disability benefits. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005); *see also Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991). In this case, that date is August 25, 2005. *Moon*, 405 F.3d at 379; (AR 1529-1532).

## DISCUSSION

**I. ERISA Claim**

The instant dispute may be framed as follows: was Unum's selection of the DOT's job description for a warehouse supervisor as what Gilcrest's regular occupation would be on a national scale arbitrary and capricious in light of the evidence in the record before it? The answer is no.

Once again, the Plan defined "regular occupation" as "the occupation [the insured is] routinely performing when [the insured's] disability begins. Unum will look at [the insured's] occupation as it is normally performed in the *national economy*, instead of how the work tasks are performed for a specific employer or at a specific location." (AR at 321). In order to determine how Gilcrest's job was normally performed in the national economy, Unum turned to

the Department of Labor's DOT.  Perhaps as a result of the inherent reliability of that source, Gilcrest does not assert that Unum's decision to rely on it was improper.

The DOT's description of a warehouse manager closely parallels the job description GLC provided to Unum about Gilcrest's position as an assistant site manager.  For example, a warehouse manager "establishes procedures for activities, such as verification of incoming and outgoing shipments, handling and disposition of materials, and keeping warehouse inventory current."  *Id.* at 926.  Similarly, an assistant site manager "assists the site manager in adhering to company procedures for the acceptance, receiving, positioning, and security of all inventory received by the company...."  *Id.* at 17.  Furthermore, while a warehouse manager "confers with department heads to ensure coordination of warehouse activities with such activities as production, sales, records control, and purchasing," an assistant site manager "inventories delivery orders with the designated DRMO-CV rep." and "ensures inventory being accepted on designated Delivery Order Manifests is accounted for.  Records this information and provides immediate reports as directed by the Site Manager."  *Id.* at 17, 926.  In addition, both warehouse managers and assistant site managers direct salvage procedures of scrap inventory.  *Id.*  Lastly, and perhaps most importantly, assistant site managers are labeled "managers" and are charged with performing managerial duties when the site manager is absent.  *Id.* at 17.

The significant similarities between the two descriptions make "it ... possible to offer a reasoned explanation, based on the evidence," for Unum's decision to utilize the DOT warehouse manager description.   While it may be true that the job Gilcrest actually performed for GLC required him to frequently lift objects greater than twenty-five (25) pounds, that fact is irrelevant given the Plan's definition of "regular occupation" in terms of how the job is

11

performed in the national economy.

Gilcrest suggests that Unum should have selected the DOT's description for a store laborer. (Doc. # 25 at 12). That description, however, only describes menial tasks and fails to account for the fact that Gilcrest's title implies that he is a manager and that Gilcrest performs managerial duties in the manager's absence. (AR at 17). To illustrate, a store laborer "marks materials with identifying information, using stencil, crayon, or other marking device. Opens bales, crates and other containers using hand tools....May compile worksheets or tickets from customer specifications....." (Doc. # 25 at 2). The store laborer description does not account for completing any managerial duties.

Thus, recognizing the similarities between the job description Unum utilized and the job description GLC provided to Unum, and cognizant of the deferential standard of review involved, the Court concludes that Unum's decision to utilize the job description it did was neither arbitrary nor capricious. Unum's motion for judgment on the administrative record on Gilcrest's ERISA claim is therefore **GRANTED** (Doc. # 24) and Gilcrest's cross motion for judgment on his ERISA claim is **DENIED**. (Doc. # 25).

**II.      Remand**

Gilcrest requests that the Court remand the case to Unum so that the issue of whether he is totally disabled as that term is defined in the Plan may be administratively exhausted. (Doc. # 25). Unum does not oppose this request; accordingly, the Court **REMANDS** the case to Unum for that purpose. The matter will be remanded after the Court addresses Unum's motion for summary judgment on its counterclaims.

## CONCLUSION

Unum's motion for judgment on the administrative record regarding Gilcrest's ERISA claim is **GRANTED**. (Doc. # 24).  The portion of Unum's motion for judgment on the administrative record regarding its counterclaims is converted to a motion for summary judgment and the parties may supplement their briefing on that issue and in accordance with that conversion on before July 21, 2006.

Unum's motion for summary judgment is hereby scheduled for a non-oral hearing on July 24, 2006.

Gilcrest's motion for judgment on the administrative record is **DENIED**.  (Doc. # 25).

This matter shall be **REMANDED** for exhaustion of administrative remedies on the issue of whether Gilcrest is totally disabled under the Plan.  Remand shall occur after Court issues its order regarding Unum's motion for summary judgment on its counterclaims.

**IT IS SO ORDERED.**

    /s/   Gregory L. Frost
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**